All right. Our next case is Sky Harbor Atlanta Northeast LLC v. Affiliated FM Insurance Company. All right. We'll hear first from Mr. Lowery. Thank you, Your Honor. It is okay with you. I have about a 45-second overview of the coverage issues in this case and then would like to dig in with you. The district court found that coverage was barred because the damage resulted from pre-policy construction or design defects, page 9 of the summary judgment order. The problem is you will not find that limitation in the policy. You won't find it anywhere. The policy expressly covers damages resulting from construction design defects, inherent vices, latent defects, all things you would expect to predate a policy that was being issued to cover an existing structure as this one was. Georgia law is very clear. Limitational coverage has to be clear and express, particularly in an all-risks policy. It covers all risks except as excluded. Now, AFL's position, particularly if you look at last night's filings, sorry about this, seems to be that the claim is barred because the damage we're claiming, the damage we're claiming, not even the damage occurred before the policy. And they could be saying one of two things and sometimes they seem to shift. They could be saying that all of the damage that we're claiming occurred before the policy or they could be saying that the policy excludes all coverage even for damage that occurs during the policy if there was any similar damage before. Neither one of those things works. If it's the first that all the damage supposedly occurred pre-policy, the district court didn't find that to be undisputed. And there's substantial contrary evidence that we have about specific million-dollar items that occurred during 2015 well within the policy period. Can I ask you, I think we're past 45 seconds. So can I ask you just a kind of logistical question? A question that I'm left with following the briefing is I think the insurance company says that mid-discovery maybe you withdrew your initial proof of loss and submitted a new one, right? And then they also say, I think, that you then later in the game withdrew your April 2019 claims and like never submitted anything else. And is that true? So I don't think that's at all what the record shows. You submitted an initial proof of loss in February and March of 2016. And as you would expect, there were follow-ups. I know you withdrew some items like the business interruption claim. I have some thoughts on that. So just so I'm clear of the timeline. So it's 2016, initial proofs of loss. I think it's April of 2019. There are some amendments. And then I think the allegation is, and this is what I'm asking. I mean, I guess, frankly, I'm sort of wondering about like mootness or rightness or something. Is it true that you then withdrew the April 2019 ones and haven't really yet submitted anything else in its place? Like I think they point to a couple of depositions where, you know, a representative of each alleged insured here gave up on some stuff and you haven't really come back to it. Like is there a dollar figure in place right now? There are substantial dollar figures that we can tie to policy losses. And I'll give you one example. Our forensic engineer, George Dubose, testified, and this testimony is cited, but maybe not quoted in our report, in our brief, that there's a $4.5 million and some odd dollars item for leaks in the cladding, the brick cladding, that is tied to an August 23, 22nd, 23rd, 2015. So at a minimum, we're talking about that. It is true as they went through depositions, there were items that fell out. But I would question the premise that your proof of loss has to somehow be perfect, or if you ask for too much, you get nothing. No, no, no. That's not really the premise of the question. The premise of the question really is, like, do we have a discrete number over which the parties are sort of disputing right now? It's all disputed. The amount of cover damage is all disputed and would depend on disputed issues of fact. But the Assam judgment ruling at AFM's position is categorical. No coverage, not $1, not for anything, based on one or more of these rationale that I was alluding to. And one possible rationale is, and I think they draw on the district court summary judgment. Can you tell me what the fortuitous event was? Certainly, the fortuitous event. Was that the August rain? Is that it? That is a fortuitous event. Is that the only one, or is there a different fortuitous event? Another fortuitous event would be, and it doesn't have to be like a one-day thing. Another fortuitous event was the increase of humidity in the hotel during summer of 2015 through leaks in the cladding. Why did it enter? It entered because the HVAC was malfunctioning and creating a negative air pressure environment that drew in that humidity. That humidity then soaks the drywall. You've got to replace the drywall. And that's another, it's another picture. But an occurrence of this policy doesn't have to be seen as an occurrence of this policy. No, I appreciate that. I understand theoretically what it could be. I'm asking a different question. I'm asking what it is that you are claiming. You've got to claim it with some degree of specificity. What happened? What loss did it cause? Why was that covered? Certainly, Your Honor. Well, let's start with the one I alluded to, the testimony of our forensic engineer. The water damage from that caused the $4.5 million in water damage from cladding leaks. The event we're identifying is the storm event of August 22, 23, 2015, and that it wetted the exterior sheathing runs inside the brick. And in order to repair the exterior sheathing, you have to pull the exterior cladding off. That's page, that's 240-10 at 148 of the PDF numbering. No, it's not. That's not the correct site. Sorry. It is definitely George DeBose's deposition, but it's 236-237. I understand. I just want to know simply what are the claims, what are the occurrences? One is the August 22, 23 rain. Is there anything else? Yes. That you're specifically claiming, you agree you have an obligation to say with some degree of specificity, what happened that caused the damage? So we have to show a covered loss, Your Honor, but let me answer it in two parts. Why don't you give me a direct answer to my question first? So the direct answer, we have the August 22, 23 rain. Right. Do you have anything other than that? We have an entry of humidity following the July 2015 summer. And that soaked the drywall and required replacement. And that's not cheap. So I know of those two things, Your Honor, for sure. And how much did you allocate? What damage was properly bore upon each of those particular occurrences? So in a couple of ways, the original proof of loss allocated specific dollars, including, for example, to that item we just discussed. That is to say, let's start with the August 22 and 23 occurrence. Sure. And water damage from cladding leaks. This is on the proof of loss that Crestline filed. And it's itemized there actually at $7 million. Call it $7.5 million. It does appear by the time of the DuBose. So two inches of rain on August 22 caused $7 million in damages to what particular things in the hotel? So the testimony from George is that it's the exterior sheathing. It's the layer right inside the brick cladding. And that all of that's got to be replaced. And it's an expensive process, Your Honor, because you have to take off the brick to do that. But I will say that it does look like the estimate was $4,521, sorry, $4,521, $460 as of the time of the DuBose deposition. But in no sense can any of this bar coverage. I mean, their position is categorical. The district court said no coverage, period, for anything. You have to reverse the district court if I show you any loss that a jury could find occurred from a covered hazard within the policy. Is it your view that they're obliged to pay for all of the windows which leak? Well, it depends. I don't know that we've claimed that. But I could see the argument that the windows are an existing defect. I thought you were claiming that all of the windows had to be replaced. So we are planning to replace all the windows. No, no, no, no. But you're claiming they're obliged to pay you for that. That is an item in the original proof of loss. And as far as I know, that's not been withdrawn. Can I ask you, just before your time expires, a discrete question about your bad-faith claim? And it's because I just don't think I understand how the statute works. So I'm looking at 3346A, right? And it seems to me to read that there are three conditions to a bad-faith claim. There's got to be coverage, number one. There's got to be, the insurer has to be convicted of a bad faith, right? But when you read the cases, it's so weird. What the cases say with respect to the second question, and uniformly, so far as I can tell, is that you, the plaintiff, have to sue within 60 days of making your demand, right? Am I wrong about that? That's not an issue that I've seen debated on this. I would need to look at that specifically. So the cases say, weirdly to me, this is not what the statute says, but the cases seem to say that the plaintiff is required to make a demand within 60 days prior to filing suit. That's a quote. And so far as I can tell from digging, that I'll confess, not I did, but my law clerk did, in the state court docket, you say in your complaint you made the demand on June 2, 2016, and the complaint is dated, just by date stamp, September 27, 2017, which is more than, which is more than 60 days. Okay. I didn't mean for it to be a quiz show. I just, I don't understand how, frankly, the cases can read the statute that way, but they seem to. The only ground for granting summary judgment on the bad faith claim was that there was no coverage. And before you do something about 60 days, let's go back, let's look if there's a waiver, let's look for those kinds of fact-intensive issues. Georgia is very quick to hold those deadlines waived, or that a jury can find them waived. Okay. So we didn't talk about a lot of what I wanted to talk about, but I'll be back up. All right. Thank you, counsel. We'll hear next from Mr. Millay. Good morning, Your Honor. May it please the Court. Dan Millay from Zell on behalf of affiliated FM, which I'll refer to as AFM today. AFM asked the Court to affirm the lower court's dismissal of the declaratory judgment and breach of contract claims because the Court found, based on its own independent review of the record, and that's stated in the order, that there was undisputed evidence that the conditions that were the subject of the appellant's claim, mold damage and the presence of water intrusion, that that existed prior to the inception of coverage. It's not that faulty workmanship existed. It's that the very damage that they're claiming was already there. Therefore, there's no fortuity. There's no during the policy period, no changing of the condition of the property from a satisfactory state to an unsatisfactory state. And based on the AFLAC decision, that lack of fortuity forecloses coverage. Can I ask you a question? Yes. Both with respect to fortuity and with respect to the change from satisfactory to according to whom? Unsatisfactory according to whom? By reference to what? Great question, Your Honor. I think that's why the judge in the order noted that he'd done his own extensive review of the record. And you'll see, the easiest place to see this is at our statement of undisputed facts from pages 11 to 41 of that filing, and it's docket 238-90 in the record. We went through multiple reports issued by various construction consultants for the various owners of this building over time. So the building was built in 1986. By the 90s, there were reports of water intrusion. In the early 2000s, there were more reports of water intrusion, the need for remediation, mold damage. The judge's point was those conditions and the work that was necessary to address those conditions existed before they bought the property and before coverage incepted. I guess what I'm wondering though is, is it possible, it may sort of strain credulity, but I mean, is it possible that they might say, oh yeah, sure, but that level of damage and the extent that it had been remediated or whatever, that was satisfactory to us? It may have been satisfactory if you wanted to run a leaky, moldy hotel. Maybe. If you wanted to have a motel that has been repaired, refurbished, remodeled, remediated, they knew that when they bought it, that they would have to do it. The Hilton Hotels Program to keep that flag required it. They knew that when they bought the property. They were delaying doing that for a couple of years, but they finally decided to start the remediation in September of 2015, and that's when they said, we've got all sorts of mold damage and water leakage. They already knew it because they had most of these reports in hand. And one of the reports, in fact, was commissioned by the prior owner just before the sale from a company called LLAM, an architectural and engineering firm. And that report found detailed extensive water and mold issues and it recommended major repairs, which the prior owner didn't do. So when they bought the policy, later they discovered this damage, which they already were aware of from all of these reports. They then made a claim asking the insurance companies to remodel, remediate this building and paying for the very project they knew they were going to have to incur at the time they bought the property. Let me drill down into that a little bit further. I don't think they dispute that there were problems with this hotel that long predated the event they described occurring on August 22 and 23, 2015. But they say there were damages that were caused by the two inches of rain that fell on August 22 and 23. They may say other things, but that's one thing that they say. And they say that there are discrete damages that are isolatable and are due to that particular fortuity and that you're liable for that under this policy. Where is the flaw in that argument? The flaw in that argument is because of the unique nature of this building and the Mr. DuBose, the witness that they talked about who did the report for Liberty and said, I can see that there was water intrusion during this rainstorm event. He went on to agree in his testimony that that sort of rain event would have happened previously and the condition existed from the time the building was built. There would have been multiple rain intrusion events just like that. But that doesn't mean that the August rain event did not cause damages. No, but before the August rain event because of all the prior rain events and all the prior intrusion, what the property needed to address its defective condition was exactly the repair that Mr. DuBose said you would do after the August rain event. But why isn't it a jury question as to what, if any, damages were attributable to the event? For a couple of reasons, Your Honor. First of all, again, because the record is replete with evidence that this was nothing new. But again, we've already agreed that the rains and the humidity event occurred in 2015 and 2016 during the coverage period, right? 2014 and 2015. They're focused on 2015 specifically. All right, but during the coverage period, the question is, why wouldn't, well, let me ask it to you this way. Would you agree that in the absence of anything else, any prior history known, that if there were damages that were caused by the August rains and the July humidity, that they would be arguably covered? If there was some distinct damage that didn't already exist? Yes. That's possible. Okay, so why isn't it a jury question then as to whether there was distinct damage? I think it's clear from the judge's order, the judge found the record was clear, and there was no question about that. And there are a couple other problems, Your Honor. But, I'm sorry, before you get to the other problems, what is it that the judge found that wasn't a weighing of the evidence as opposed to a finding that there couldn't have possibly been any new damage? He found that the parties agreed that the damage preexisted the inception of the policy, and you'll find that in the order on pages 4 and 8. He says that. Right, but they couldn't have found that the damage preexisted the August, the August event and the July event because those things happened afterwards unless they were finding that there was no new, the parties were agreeing that there was no new damage in August or July, right? And so if that's the case, then why would we even be in litigation in the first place? Well, let me go to the other points that support the judge's conclusion that there's nothing here that occurred in 2015 that is new damage or that changed the condition of the building. They submitted a claim for $20 million. That was their original proof of loss, both appellants. And that was an endorsement that they always intended to do. Then over the course of discovery when it became obvious that this had nothing to do with anything that happened in September or August of 2015, they pulled that back to a $13 million claim and that was in their amended initial disclosures. Then at the end of discovery, they withdrew all of their claims. They don't have a claim currently. So what damage could there be that occurred in August of 2015 that is distinct, different, a change in condition of the property that shows a fortuity resulting damage? There's nothing in the record to establish that. They don't even have a stated claim at this point. So what would the claim be if it was subject to a jury verdict? There isn't one. They've withdrawn all of their claims. And we don't know what they're No credible evidence. No competence. Again, well, there's the problem, right? No credible evidence. I mean, what is it that makes it not credible or not competent? Because otherwise it seems like it's a jury question. The fact that Mr. DuBose testified that what happened in August of 2015, in his opinion, had happened multiple times before and the repairs were already necessary. That's not a change in the condition of the building. That's analogous to the Affleck case where the court found this is a cost of doing business. You've got to deal with this Y2K date recognition issue. Nothing's changing. Nothing's happening. You just need to fix your problem. The judge found that's the same analogous situation that's occurring here. When they bought the building, they needed to fix this problem. A leaky, moldy, failing hotel that needed major refurbishment that the Hilton Company was going to require. And they knew that. After the rainstorm in August of 2015, they had the exact same building in the exact same condition, needing the exact same work. Help me. I'm sorry. Help me again. I understand what you're saying, but I want to sharpen the question. Is there any evidence in this record that establishes any distinct damage that was caused by the rain August 22, 23, 2015? No. Is there any distinct evidence that shows that there was distinct damage caused by the humidity problem in July that they referenced? No. This building had problems in taking... I understand that it had a problem in the past and it was a continuing, deteriorating problem that occurred over an extended period of time. What I'm asking is whether there was any specific evidence that assigned a distinct damage for the rain in August and the humidity. Not that I'm aware of. Mr. DuBose did say that was happening in the summer months of 2015, but he didn't tie that to any specific items of damage. No specific sum, no specific damage allocated specifically for those two events. Right, and that leads to the final problem with this entire line. They have to show an occurrence with a fortuitous event during the policy period that caused damage to the property and that damage, to repair it, you'll spend in excess of $25,000 because that's the per occurrence deductible. There's no evidence of any discrete event that caused a huge amount of damage in excess of $25,000. If I could move to another point, I wanted to note that the bad faith claim falls along with the BJA and breach of contract claims because if there is no coverage, there can be no bad faith. In addition, because they withdrew the proofs on which the statutory bad faith claim is based and they withdrew them informing us that they were inaccurate and overstated, we can't be found to have acted in bad faith by not paying the $20 million when they've already admitted it was overstated and they withdrew the proofs. That can't be the basis for a bad faith claim. We can't be found to have acted unreasonably under that set of facts. Just to help me, maybe I'm just showing my ignorance here, so it's not your contention that somehow there's not a live controversy here because they've withdrawn their proofs and it's sort of a moving target. We don't really know what the current claim is. There's a lot of stuff in your brief about that. So what's the upshot of that? The implication of that is what? I guess are you telling me that this case is moot or not right? Yes, John, because they don't have a claim that's been presented. Discovery is closed, so we don't know their claim. It might be moot. Was that an argument that you made that this issue is no longer justiciable? It is not a live Article 3 case or controversy on the grounds of mootness? I don't recall that we made that argument below, but I do know the judge didn't address it. But did you make it here, that the case has become moot? If I look at your brief, is there any indication this case is moot? That's the argument. Non-justiciable? It may well be. And even if you didn't raise it, it's always on the table, but I'm just asking, do you argue mootness here? No, we offer the points that Judge Newsom has asked questions about. You didn't draw the circle complete and say, therefore, the case is moot. It's non-justiciable. Do you want to take a moment and talk about the cross-appeal? Yes, so cross-appeal is based on the judge's decision that there can be no reliance under our set of facts, and I'll state it very simply. There are cases in other jurisdictions. We cited in our briefs. There is the Tucker case in Georgia, where a jury verdict was upheld, where the basis of the jury verdict was fraud by the insured in presenting a misleading claim that the insurer then had to investigate. The only difference between that case and this case is that there is an affirmative defense, not an affirmative counterclaim for fraud. But there's nothing in the Tucker case to suggest that that distinction makes a difference. We believe Georgia recognizes a claim of fraud by an insurer who is misled by the insured, and that misleading information leads the insurer to necessarily design a scope of investigation to understand the claim, find out what's true, what's not true. That's what happened here. It cost half a million dollars to conduct that investigation. It took months and months and months to do it. If they had been forthright from the start and said, here's what we knew when we bought the building, here are the reports we have, the historical reports that document the condition of this building before we bought it, we would have simply closed this investigation because our own experts would have confirmed this is all accurate, that was the condition of the building, there's no fortuitous loss during the policy period. Thank you. All right. Mr. Lowery, you've got five minutes. Thank you, Your Honor. A couple of points that I very much want to get to. If you look at the policy's treatment of surface water flooding and earth movement, those two coverages specifically say no coverage if the damage started before the policy. It does not say that for any other type of loss in the policy. Georgia follows the express evidence rule, particularly with insurance policies. We can't read a limitation that the insurance company made express at one point into the policy at another. Second point, there is a dispute of fact, a robust dispute of fact, as to whether anything comparable to the damage that we found in 2015 preexisted. And let me give you a few points on that. We had three property condition evaluation reports that didn't show anything like this. They said good, no action items required. Liberty's Forensic Engineer, George Dubose, testified if the problems we saw in 2015 had existed in 2013 at purchase, ADI, the property condition evaluator would have seen it. And that is about 240-10 at ADI, one of the PDF, and 148 of the PDF. We've already talked about testimony about discrete damage in 2015. I mean, we have other things. But your friend on the other side of the aisle says all of that goes away because your expert testified that the same damages had already occurred and there was no new damage. What do you say to that? If you look at the testimony, what you'll see is the passages, things like, could it have happened before? For example, there's the question about the HVAC drawing and the moisture that we talked about. And he concedes, yeah, that could have happened in prior years. He says it still would have caused distinct additional damage in 2015. And what is the amount that he attributes to that distinct additional damage? The cost to replace the saturated drywall that he found wet as a result of the summer cooling incident, and that's itemized in the proof of loss. It's a multi-million dollar item. And so I guess the question is, that damage of having to replace the drywall, did he testify that that wouldn't have had to have been replaced but for the July humidity event? None of his words. He does say the event, the event we're isolating for the brick crowding leaks is the August 22-23 rainstorm. So we're entitled to the fair inferences from his testimony that he's saying that is the thing that caused it. Is it possible? Could we speculate other things that happened before? Yes, but we're now into jury issues. We're not now into summary judgment. Help me again with the testimony of your expert, if you would, counsel. Of course. Does your expert know the damage that was caused by, in this amount, that was caused by the two inches of rain that fell in August of 2015? And if he says it, tell me where I'll find that in the record. 240-10 at page 236, that's the PDF, not the annual deposition pagination, to 237, you're looking for lines, line 4 to line 14, for example. And then on the humidity point, you're going to the next page looking at line... And when I look at line 4 to 14, I will find a distinct amount allocated for a distinct damage that occurred in 2015. $4,521,460. $4,521,460. Lawyers shouldn't do math, but that's a big number. I'm not sure what they're talking about. We argued summary judgment. We argued that these items were covered. There is a live dispute here. And again, their position is no coverage whatsoever because the policy bars it. That's what the district court said. That's not right. We haven't heard any attempt to defend that policy construction here. I'm still in third. Is there... The problem with the counterclaim theory is it assumes they're right about coverage. It assumes, as my friend just said, if they'd just been honest that they were reports of prior damage or that these were attributable to prior defects, then we could have just had a truncated investigation to close the case and gone home. That's not right. That's not what the policy says. That's not the legal position. Reliance has to be on a material fact. And under this policy, those items that they say they relied on don't eliminate coverage. They still would have had to figure out, as we had this morning, what are... At a minimum, they'd have to do that, even if you vacate some federal counterclaims on this ground of reliance. Isn't there evidence here that there were false representations made, particularly about the representation that they were unaware of? Any mold problems at the hotel before September of 2015? Yeah. That was false, wasn't it? That arguably was a false statement, wasn't it, upon which they would have relied? If you divorced it from the context, which is acknowledgement, acknowledgement of mold spots, that's what they had before, maybe, but you've got to read that as a whole. But if there was mold, let's say there was mold before or they were unaware of mold or aware of mold before the policy, that doesn't bar coverage. I'm talking right now about the counterclaim and whether they could have justifiably relied on a statement or statements made that were, by your own admission, false. Have I overstated that or if I have, correct me, please. I think you need to look at the other, the surrounding context in which we explain. Did we know there were spots of mold at the time of purchase? Yeah, I saw them. It was about 20 guest rooms, that sort of thing. But, Your Honor, the reason they couldn't rely on that is because, let's say we had said, we knew there was some mold before the policy incepted. Let's just assume that was the universe. Their theory is they could have closed the file. They can't. That's the whole point on coverage, and that's why I'm linking coverage back to the counterclaim. And even if you guys decide to vacate the counterclaim on some reliance issue, you should at least instruct the district court to take a fresh look at summary judgment based on what you tell us the coverage provisions really say. All right. Any other questions? No. Thank you. All right. Thank you, counsel. We'll be in recess until tomorrow morning.